# UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

## NOT FOR PUBLICATION

FILED
JAMES J. WALDRON, CLERK

NOV. 23, 2010

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

November 23, 2010

## LETTER OPINION
## ORIGINAL FILED WITH THE CLERK OF THE COURT

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Steven R. Klein, Esq.
Ilana Volkov, Esq.
25 Main Street
Hackensack, New Jersey 07602
*Counsel for Defendants, Ron Jelling, Jelmac, L.L.C., Chrysler of Paramus, Inc., and Dodge of Paramus, Inc.*

Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.
Richard D. Trenk, Esq.
Joshua H. Raymond, Esq.
Adam D. Wolper, Esq.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
*Counsel for Plaintiffs, Jeep Eagle 17 Inc. and WOO, L.L.C.*

Yablonsky & Associates, L.L.C.
Daniel J. Yablonsky, Esq.
Ilissa Churgin Hook, Esq.
1430 Route 23 North
Wayne, New Jersey 07470
*Counsel for Plaintiff, Leigh Rzasa-Ormes*

Re:   **Jeep Eagle 17, Inc.,** *et al.,* **Debtors**
      **Case No. 09-23708 (DHS)**
      **Jeep Eagle 17, Inc.,** *et al.* **v. Chrysler Financial Services Americas, L.L.C.,** *et al.*
      **Adv. Pro. No. 09-01913 (DHS)**

Page 2
November 23, 2010


Dear Counsel:

Before the Court is a motion of Ron Jelling ("Jelling"), Jelmac, L.L.C. ("Jelmac"), Chrysler of Paramus, Inc. ("Chrysler of Paramus"), and Dodge of Paramus, Inc. ("Dodge of Paramus") (collectively, the "Defendants") for summary judgment.[1]  The motion seeks to dispose of tortious interference and conspiracy claims asserted by Jeep Eagle 17, Inc. ("Jeep Eagle"), WOO, L.L.C., and Leigh Rzasa-Ormes ("Rzasa-Ormes") (collectively, the "Plaintiffs"). Essentially, this dispute arises from the attempted relocation of Jeep Eagle, a car dealership, from Route 17 in Paramus, New Jersey to Route 4 in Paramus, New Jersey.  The Defendants contend the relocation of the dealership would operate to their economic detriment.  Accordingly, the Defendants filed protests and objections with (1) the Motor Vehicle Franchise Committee ("MVFC") and (2) the Zoning Board of Adjustments for the Borough of Paramus ("Zoning Board").  (Defs.' Br. in Supp. of Mot. for Summ. J., 2.)

The Defendants maintain that they did not commit any tortious acts, but rather exercised their legal rights in a lawful attempt to protect their economic interests.  The Plaintiffs argue that the Defendants' actions were frivolous, motivated by malice, and brought solely to "hassle, embarrass, denigrate, injure, and ultimately destroy, the Plaintiffs' business."  (Pls.' Br. in Opp'n to Mot. for Summ. J., 1.)  Further, the Plaintiffs argue that the Defendants may not hide behind their exercise of a legal right where such exercise was objectively and subjectively baseless.  In addition, the Plaintiffs allege that Chrysler Financial Services Americas, L.L.C. ("Chrysler Financial"), an entity responsible for financing Chrysler dealerships, was not only complicit with, but a willing co-conspirator in, the Defendants' attempt to destroy the Plaintiffs' business. Finally, the Plaintiffs argue that Jelling is personally liable for the tortious conduct he allegedly committed while acting on behalf of his dealerships.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

---

[1] Defendant, Ron Jelling, is the principal of various entities including Jelmac, Chrysler of Paramus, and Dodge of Paramus.  (Defs.' Br. in Supp. of Mot. for Summ. J., 5.)

Page 3
November 23, 2010

## <u>STATEMENT OF FACTS</u>

I.    **Defendants' Statement of Facts**

    A.    **Motor Vehicle Franchise Committee Protest**

        In 2006, the Plaintiffs received permission from Chrysler Motors to relocate Jeep Eagle, an automobile dealership, to a new location on Route 4 West in Paramus, New Jersey. (Defs. Br. in Supp. of Mot. for Summ. J., 4.)  Pursuant to the Motor Vehicle Franchise Practices Act, N.J.S.A. 56:10-16, *et seq.*, Chrysler Motors informed nearby dealerships, including Jelmac, the operator of Westwood Chrysler in Paramus, of the approved relocation. (*Id.*)  Concerned about the potential for an adverse impact on its business, Jelmac undertook an investigation into the potential economic consequences of the relocation. (*Id.*; Aff. of Eric Chase ("Chase Aff.") ¶ 7-8.)  Based upon this investigation, Jelmac was satisfied that Jeep Eagle's proposed move to Route 4 West would negatively impact the flow of consumers into Westwood Chrysler and cause it financial harm. (*See Id.*)  On advice of counsel, Jelmac filed a formal protest to Jeep Eagle's relocation with the MVFC. (*Id.*; Chase Aff. ¶ 9.)

    B.    **Zoning Board Objection**

        Chrysler of Paramus and Dodge of Paramus were similarly concerned with the relocation of Jeep Eagle.  In connection with its plan to relocate, Jeep Eagle applied to the Zoning Board for "multiple variances and general site plan approval." (Defs.' Br. in Supp. of Mot. for Summ. J., 5.)  Upon learning of Jeep Eagle's variance applications, Chrysler of Paramus and Dodge of Paramus, as Paramus taxpayers and through their principal, Jelling,[2] filed objections pursuant to Borough of Paramus Zoning Ordinances §§ 429-102 through 104. (*Id.*; Aff. of William I. Strasser ("Strasser Aff.") ¶¶ 5, 18.)  This section was applicable because both dealerships house service stations on their premises and the ordinances prohibit the location of "service stations" within 2,600 feet of one another. PARAMUS, N.J., ORDINANCES pt. II, ch. 429, § 103(A) (1992); (Strasser Aff. ¶ 6.)

        By March of 2008, the Defendants' objections and protests had concluded unsuccessfully and the Plaintiffs had received "all of the necessary approvals to build the . . . new dealership . . . ." (*Id.* at 6; Pls.' Adv. Compl., ¶ 49.)  On May 20, 2008, however, Chrysler Financial placed the relocation on hold "due to [the Plaintiffs'] inability to meet the terms of an amended recapitalization agreement." (Defs.' Br. in Supp. of Mot. for Summ. J., 6.)  On

---

[2] In New Jersey, a person has standing to object when he is an "interested party". An "interested party" is defined, in relevant part, as ". . . any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under this act . . . ." N.J. Stat. Ann. § 40:55D-4; *See Village Supermarket, Inc. v. Mayfair Supermarket, Inc.*, 269 N.J. Super. 224, 234 (Law Div. 1993) ("Our Supreme Court has tended to define "standing" in zoning cases more broadly than has the United States Supreme Court.").

Page 4
November 23, 2010

May 14, 2009, Jeep Eagle's franchise was terminated by Chrysler Motors and thus relocation of Jeep Eagle was postponed indefinitely. (*Id*. at 7.)

## II.    Plaintiffs' Additional and Disputed Facts

The Plaintiffs allege that the Defendants' efforts to thwart Jeep Eagle's relocation were made in bad faith and were the product of a tortured and fractured relationship between the respective principals, Jelling and Rzasa-Ormes. (Pls.' Br. in Opp'n to Mot. for Summ. J., 3-6.) The Plaintiffs claim to have suffered economic harm as a result of the mutual desire of Jelling and Chrysler Financial to force Rzasa-Ormes to convey Jeep Eagle to Jelling, thereby consolidating the dealerships. (*Id*. at 5.) The litigation at issue in the Plaintiffs' complaint was instituted as a result of their need to relocate after Chrysler Realty decided not to renew Jeep Eagle's lease. (*Id*. at 6.) Jeep Eagle's new location was to be approximately 0.7 to 2.5 miles further from Jelmac's Westwood dealership than Jeep Eagle's original location. (*Compare id*. at 7, *with* Defs.' Br. in Supp. of Mot. for Summ. J., 4; Certif. of Leigh Rzasa-Ormes ("Rzasa-Ormes Certif.")) ¶¶ 5-6, Ex. 1-2.)

### A.    The MVFC Protest and Zoning Board Objections

On February 2, 2006, Jelmac filed a "formal protest with the MVFC, objecting to [Jeep Eagle's] relocation . . . ." (Pls.' Br. in Opp'n to Mot. for Summ. J., 7.) On February 27, 2007, the Office of Administrative Law ("OAL") found the protest "untimely and therefore barred." (*Id*.) On April 25, 2007, the MVFC affirmed the OAL's decision. (*Id*.) Jelmac appealed the decision to the Superior Court of New Jersey, Appellate Division, but withdrew its appeal before an opinion was rendered on the matter. (*Id*.)

In addition to the MVFC protest, the Plaintiffs allege that Jelling sought to further frustrate Jeep Eagle through filing the aforementioned objections with the Zoning Board, all of which were rejected. (*Id*. at 9-10.) Thereafter, Jelling brought these complaints to the Superior Court of New Jersey, Law Division. (*Id*. at 10.) The Law Division also rejected his arguments and remanded the case on "very narrow" grounds.[3] (*Id*.; Rzasa-Ormes Certif. ¶ 28, Ex. 24.)

### B.    Alleged Conspiracy Between Chrysler Financial and Jelling

According to the Plaintiffs, Chrysler Financial "does not release financial information on a dealership." (Pls.' Br. in Opp'n to Mot. for Summ. J., 11.) Instead, its policy is to issue "composites" which supply the financial information of multiple dealerships while keeping the identity of those dealerships confidential. (*Id*.) Jelling, however, allegedly contacted Ron Baransky of Chrysler Financial and requested a composite that included Chrysler of Paramus,

---

[3] The Plaintiffs quote a portion of the Superior Court Opinion: "[E]xcept as I have specifically outlined in detail, the board of adjustment was not arbitrary, capricious and unreasonable and that's why it's a very narrow, very limited remand." (Pls.' Br. in Opp'n to Mot. for Summ. J., 10; Rzasa-Ormes Certif. ¶ 28, Ex. 24.)

Page 5
November 23, 2010

Jeep Eagle, and a dealership in New York.[4] (*Id.* at 12; Rzasa-Ormes Certif. ¶ 11, Ex. 7.)  It is further alleged that Jelling sent the composite to Stuart Raskin, a Certified Public Accountant, with instructions to ascertain the financial position of Jeep Eagle.  (Pls.' Br. in Opp'n to Mot. for Summ. J., 12; Rzasa-Ormes Certif. ¶ 12, Ex. 8.)  On June 30, 2006, Raskin informed Jelling that he had successfully isolated Jeep Eagle's financial information from the composite numbers. (*Id.*)  Jelling subsequently caused his agents to bring this information before the Zoning Board in support of his argument that Jeep Eagle derived a substantial portion of its business from its service facility.  (Pls.' Br. in Opp'n to Mot. for Summ. J., 12.)

The Plaintiffs also allege further impropriety between Chrysler Financial and Jelling.  (*Id.* at 12-16; Rzasa-Ormes Certif. ¶¶ 18,26,29 Ex. 14,22,25.)  Despite the allegedly dire financial condition of Jelling's dealerships, Chrysler Financial did not take any action against the troubled entities, such as imposing a financing hold or requiring a recapitalization agreement.  (Pls.' Br. in Opp'n to Mot. for Summ. J., 12.)  Instead, the Plaintiffs allege that Chrysler Financial took action adverse to Jeep Eagle in order to support Jelling.[5]  (*Id.* at 13-16; Rzasa-Ormes Certif. ¶¶ 22,29, Ex. 18,25.)  Jelling's dealerships were not put on a financing hold until December of 2008.  (Pls, ' Br. in Opp'n to Mot. for Summ. J., 15.)


## DISCUSSION

### I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."  *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded

---

[4] Plaintiffs claim that "dealers . . . are not supposed to be able to request what specific dealer's financial information they wanted on a composite, nor are they supposed to know what dealers' information was used in the composite." (Pls.' Br. in Opp'n to Mot. for Summ. J., 11.)

[5] Plaintiffs state or imply that the following actions by Chrysler Financial were motivated by their support of Jelling's desire to acquire Jeep Eagle: refusing a request for a mortgage on the relocation property, commencement of an aggressive audit, allegedly forcing Jeep Eagle to sign a recapitalization agreement, and imposition of a financing hold in May 2008.  (Pls.' Br. in Opp'n to Mot. for Summ. J., 14-15.)

Page 6
November 23, 2010

from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.    Tortious Interference with Contract and/or Prospective Economic Advantage

The law recognizes the need to "protect[] both contracts and prospective business relationships from tortious interference." *Van Natta Mech. Corp. v. Di Staulo*, 277 N.J. Super. 175, 182 (App. Div. 1994). "Not only does New Jersey law protect a party's interest in a contract already made, the law protects also a [person's] interest in reasonable expectations of economic advantage." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750 (1989) (quoting *Louis Kamm, Inc. v. Flink*, 113 N.J.L. 582, 586 (E. & A. 1934)). "An action for tortious interference with a prospective business relation protects the right to "pursue one's business, calling or occupation free from undue influence or molestation." *Id.* To establish a

Page 7
November 23, 2010

claim for interference with a prospective contractual or economic relationship, a plaintiff must prove: (1) a reasonable expectation of economic advantage, (2) defendant interfered intentionally and with malice, (3) the interference caused the loss of the prospective gain, and (4) the injury must have caused the damage. *E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.*, 307 N.J. Super. 546, 558 (Ch. Div. 1996) (citing *Printing Mart-Morristown*, 116 N.J. at 751).

Ultimately, a cause of action for tortious interference turns on the presence or absence of a defendant's legally wrongful or tortious conduct, because without some wrongful act by the Defendants the other elements cannot exist. Under certain circumstances, abuse of the legal process may constitute tortious conduct. *See Mayflower Indus. v. Thor Corp.*, 15 N.J. Super. 337 (Ch. Div. 1951); *See also Village Supermarket*, 269 N.J. Super. at 228 (alleged tortious interference where a competitor objected to plaintiff's variance applications); *Sussex Commons Outlets, LLC v. Chelsea Property Group, Inc.*, No. A-3714-07T1, 2010 N.J. Super. Unpub. Lexis 2342 at *19-*20 (App. Div. September 23, 2010) (Affirmed summary judgment dismissing tortious interference claim because "defendant had a legitimate business justification for its actions"). Although litigation often serves a legitimate business purpose, a business competitor may not use legal tactics maliciously. However, the malice element does not refer to "ill-will toward the plaintiff . . . [r]ather it means the harm was inflicted intentionally and without justification or excuse." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div. 1995) (quoting *Printing Mart-Morristown*, 116 N.J. at 751).

The justification must cover a defendant's motive and purpose as well as the means used. *See Di Cristofaro v. Laurel Grove Memorial Park*, 43 N.J. Super. 244, 256 (App. Div. 1957). A competitive motive or purpose may justify a course of conduct provided "the conduct was sanctioned by the rules of the game." *Ideal Dairy*, 282 N.J. Super. at 199 (quoting *Harper-Lawrence, Inc. v. United Merchants & Mfrs. Inc.*, 261 N.J. Super. 554, 568 (App. Div. 1993) (internal quotation marks omitted). The standard for determining whether conduct is sufficiently malicious is a flexible one applied by the court on a case-by-case basis. *Printing Mart-Morristown*, 116 N.J. at 757.

In the instant matter, the Defendants argue that they were merely protecting their businesses through legitimate exercise of their legal rights. The Court considers the Defendants' obvious concern over the relocation of a competitor reasonable and their subsequent conduct was calculated to achieve a legitimate business purpose. Viewed in the context of the marketplace, protective conduct met through lawful means is well within "the rules of the game." To undermine the merit of the Defendants' argument, the Plaintiffs rely on the fact that the proposed relocation was technically further from the Defendant's dealership than their current location. This fact is not dispositive. Proximity between competitors is just one factor to consider in the determination of how relocation may affect business. For example, the new location may be more accessible and convenient for consumers and thereby have the potential to significantly impact competition. Furthermore, the MVFC grants the right to object irrespective of a move farther away from a competitor, so long as the relocation is within the statutory area. *See* N.J.

Page 8
November 23, 2010

Stat. § 56:10-19.  As to the objections before the Zoning Board, New Jersey law grants broad standing to taxpayers in these forums.  *See* N.J. Stat. Ann. § 40:55D-4.  Thus, the Defendants' MVFC protest and Zoning Board objections clearly "constitute privileged competitive efforts[.]" *E Z Sockets*, 307 N.J. Super. at 559 (citing *Printing Mart-Morristown*, 116 N.J. at 756).

Although the Court does not find the malice required to show tortious interference, the means employed by the Defendants warrant some discussion.  The law hesitates to punish persons who choose to exercise their legal right to litigate.  *See Penwag Property Co. Inc. v. Landau*, 76 N.J. 595 (1978).  "The burden upon one bringing such an action is heavy because of the chilling effect upon legitimate, as well as less than legitimate, lawsuits." *Village Supermarket*, 269 N.J. Super. at 228-229.  The *Noerr-Pennington* doctrine operates to preserve litigant's First Amendment rights.  *Id.* at 229-30.  Under the doctrine, "participation in judicial and administrative proceedings . . . is protected unless it is "objectively baseless"[.]"[6]  *Id.* at 230 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993).

An "objectively baseless" proceeding falls within the "sham" exception to the *Noerr-Pennington* doctrine.  *Id.*  The "objectively baseless" standard represents a high threshold. Participation in proceedings meets the standard when "no reasonable litigant could realistically expect success on the merits."  *Id.* at 232.  However, "[s]uccess on the merits . . . has never been a requirement for . . . immunity."  *Maximus Real Estate Fund, LLC v. Marotta*, No. A-5459-07T1 and A-5501-07T1, 2009 N.J. Super. Unpub. Lexis 2228 at 16 (App. Div. August 13, 2009) (citing *Structure Bldg. Corp. v. Abella,* 377 N.J. Super. 467, 471-472 (App. Div. 2005)).

Here, the Defendants were unsuccessful in litigation.  However, their failure to prevail was not the result of frivolous assertions or otherwise unreasonable claims.  In fact, the Defendants' appeal of the Zoning Board's decision was remanded for further consideration, albeit on narrow grounds.  (Pls.' Br. in Opp'n to Mot. for Summ. J., 22-3.)  Additionally, the protest filed with the MVFC is explicitly allowed under New Jersey law.  *See* N.J. Stat. § 56:10-19.  Notably, this statutory right is not restricted by a requirement of "reasonableness" nor is it confined to particular factual circumstances, i.e. the distance between the relocating dealership and the protestor.[7]  *See Id.*  Punishing the Defendants for a losing effort would be wholly inconsistent with the aim of the *Noerr-Pennington* doctrine to protect First Amendment rights and promote access to courts.

---

[6] "Access to the courts is far too precious a right for us to infer wrongdoing from nothing more than using the judicial process to seek a competitive advantage in a doubtful case."  *Prof. Real Estate*, 508 U.S. at 69 (Stevens, J., concurring).

[7] "Any franchise who is entitled to receive the written notice may file with the [MVFC] a protest to the . . . relocating . . . of the franchise or the establishment . . . ."  N.J. Stat. § 56:10-19.

Page 9
November 23, 2010

## III.      Civil Conspiracy

To prove a claim for civil conspiracy the Plaintiffs must show: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Everest Nat'l Ins. Co. v. Sutton*, No. 07-722, 2009 U.S. Dist. Lexis 96091 at *7 (D.N.J. Oct. 14, 2009) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003)). Further, "[t]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." *Board of Ed. v. Hoek*, 38 N.J. 213, 238 (1962); *See Middlesex Concrete Products & Excavating Corp., v. The Carteret Industrial Ass'n*, 37 N.J. 507, 516 (1962); *See also Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177-78 (2005).

Here, the underlying wrong is alleged tortious interference with contract and/or prospective economic advantage. As previously discussed, the Defendants' actions were taken pursuant to state statute and municipal ordinance and had a legitimate business purpose. As such, they were not wrongful. The Plaintiffs argue that Chrysler Financial violated company policy and surrendered a composite containing confidential financial information to the Defendants. Accepting this argument as true, the transaction still does not "constitute an underlying wrong which, absent the [alleged] conspiracy, would give a right of action." *Hoek*, 38 N.J. at 238. Here, the conspiracy is missing its essence, an actionable underlying wrong. Accordingly, the claim fails.

## IV.      Personal Liability of Corporate Officers

The Plaintiffs allege that Jelling, as principal of the corporate Defendants, is personally liable in tort. It is well settled that "[c]orporate officers are liable for their torts, although committed when acting officially." *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, 256 (Ch. Div. 1972) (citing 3 *Fletcher Cyclopedia of Corporations* (Perm. Ed.), § 1135, pp. 778-800). Typically, the 'participation theory' provides the basis for actions against corporate officers and allows for liability when the officer is "sufficiently involved in the commission of the tort." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303 (2002). An officer who personally makes or even sanctions tortious behaviors may be found liable under the theory. *See Kugler*, 120 N.J. Super. at 257. A predicate to an officer's liability "is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." *Saltiel*, 170 N.J. at 303.

In the case at bar, the Plaintiffs correctly argue that Jelling may be held liable in tort even when acting in his official capacity. However, as discussed above, there has been no tortious act committed by Jelling as an individual or on behalf of his corporate entities. The litigation which serves as the basis for the tortious interference complaint was not malicious but justified. Thus, Jelling is not personally liable.

Page 10
November 23, 2010

## CONCLUSION

The Plaintiffs have failed to present evidence sufficient to support claims for tortious interference with contract and/or prospective economic advantage and civil conspiracy. Therefore, the Defendants' motion for summary judgment on Count Seven and Count Eight of the Plaintiffs' Adversary Complaint is hereby granted.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

s/  *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure